## Dixon v. Toscani

*Montgomery, McCracken, Walker & Rhoads,* for plaintiff.

*Daniel B. Pierson* and *James P. Fox,* for defendant.

HONEYMAN, J., January 10, 1972.—This is an action in mandamus brought by plaintiff, pursuant to section 308 of the Pennsylvania Business Corporation Law of 1933, as amended, 15 PS §1308, wherein plaintiff, as a stockholder, seeks to inspect the current shareholder list of defendant corporation and make a copy of same. Defendant resists this action on the theory that plaintiff is not acting in good faith, nor does he have a proper purpose upon which to base his request for inspection as required by the previously referred to section of the Pennsylvania Business Corporation Law.

## FINDINGS OF FACT

1. Plaintiff is an individual with a business address at 9th Floor, IVB Building, 1700 Market Street, Philadelphia, Pa. 19103.

2. Defendant, Dominic P. Toscani, is chairman of the board of directors and president of defendant corporation, Aberle Industries, Inc.

3. Defendant, Aberle Industries, Inc., hereinafter called "Aberle", is a Pennsylvania corporation with its principal office at Howard and Vine Streets, Stowe, Montgomery County, Pa., and its registered office at Hanover and South Streets, Pottstown, Montgomery County, Pa.

4. Plaintiff is the registered beneficial owner of 950 shares of the capital stock of Aberle. The shares were

purchased during two periods of public offerings by Aberle, in February of 1969, and March of 1970.

5. The first contact plaintiff had with defendant corporation occurred while he was employed as an associate with the law firm of Montgomery, McCracken, Walker and Rhoads, his present counsel. During this time plaintiff participated in the preparation of a registration statement for the public sale of its stock by Aberle. Prior to the effective date of the registration statement, plaintiff terminated his employment and assumed his current position as associate resident counsel and assistant secretary with the Industrial Valley Bank.

6. The annual meeting of shareholders of Aberle took place in February 1971. Plaintiff attended this meeting due to the fact that he had become dissatisfied with the declining value of his shares and the declining earnings of the company.

7. Plaintiff attempted to ask some questions relating to the financial affairs of defendant corporation, but was rebuffed by the chairman of the meeting, Mr. Toscani, who adjourned the proceedings immediately thereafter. Since the questions, in plaintiff's judgment, would have been of great interest to the body of shareholders as a whole, he refused to accept an offer of a private conference with the board of directors, which would have been presumptively held for the purpose of answering his questions.

8. At the time of the meeting, plaintiff was advised of the disassociation in a managerial capacity of one Nicholas Malesky with Aberle. This gentleman was known to plaintiff as an organizer of Aberle during plaintiff's contact with the registration statement preparation.

9. Subsequent to the February 1971 shareholder's annual meeting, plaintiff met with Mr. Malesky at the

office of plaintiff's former employer. At this time the law firm of Montgomery, McCracken, Walker and Rhoads were no longer acting as counsel in any manner on behalf of Aberle.

10. During the second meeting, which was some time prior to May 21, 1971, the date of plaintiff's demand letter upon which this suit is based (Exhibit "A" plaintiff's complaint), a Mr. Merlino, who was also a dissatisfied shareholder, was present. Various alternative courses of action were discussed for the purpose of changing the course of management of the corporation. No definite means was settled upon except that plaintiff, of his own volition, indicated that he would attempt to obtain a current shareholders' list from Aberle.

11. There was a discussion of making a tender offer to purchase additional shares of Aberle, but this was only one of several alternative plans. In any event, no such decision was ever reached and it appears from plaintiff's uncontroverted and wholly credible testimony that such was, at best, a remote possibility.

12. There was no agreement, express or implied, at this meeting that plaintiff act in any representative capacity whatsoever.

13. The uncontroverted testimony of plaintiff reveals that his avowed purpose in seeking inspection and duplication of the shareholders' list was to communicate with other shareholders regarding the election of officers and/or directors other than those presently serving.

14. At no time has plaintiff acted in other than the utmost of good faith and within the Canons of Legal Ethics. There is no evidence of any attempt to damage the competitive position of defendant corporation by the action herein sought by plaintiff.

15. On May 21, 1971, plaintiff, pursuant to Pennsyl-

vania Business Corporation Law, section 308, made a written demand upon Aberle for inspection and to copy extracts from said defendant corporation's stock book. No reply has been forthcoming.

16. The Girard Trust Bank, Broad and Chestnut Streets, Philadelphia, Pa., is Aberle's transfer agent, and as such, is in possession of the list of shareholders of Aberle.

## DISCUSSION

The law in Pennsylvania is clear insofar as a shareholder's right to inspect the stock book of his own corporation. Section 308 of the Pa.B.C.L., 15 PS §1308, contains the authority therefor:

"Corporate records: INSPECTION—A. Every business corporation shall keep at its registered office or principal place of business an original or duplicate record of the proceedings of the shareholders and of the directors, and the original or a copy of its by-laws, including all amendments or alterations thereto to date, certified by the secretary of the corporation, and shall keep it at its registered office or principal place of business or at the office of its transfer agent or registrar an original or a duplicate share register, giving the names of the shareholders, their respective addresses and the number and classes of shares held by each. . . .

"B. *Every* shareholder *shall,* upon *written demand under oath stating the purpose thereof, have a right to examine,* in person or by agent . . . the share register . . . and make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a shareholder." (Italics supplied.)

The obvious prerequisites for inspection then are: (1) the party demanding the inspection must be a

shareholder; (2) such demand must be in writing under oath; (3) the inspection must be for a "proper purpose." The first two requirements are not in controversy; the third is the subject of this dispute. "Proper purpose" is defined in the act as "a purpose reasonably related to such person's interest as a shareholder": Section 308, supra. We have found, despite innuendos by defendant to the contrary, that plaintiff's avowed purpose was in fact the communication with other shareholders regarding the election of new directors. Such is a proper purpose: Hanser v. York Water Co., 278 Pa. 387 (1924); Goldman v. Trans-United Industries, Inc., 404 Pa. 288 (1961).

In any event the burden of proving an improper purpose is upon the corporation as there is a presumption of propriety in favor of the shareholder: Hanser, supra; Alcorn v. Iron & Glass Dollar Savings Bond, 102 P.L.J. 259 (C.P. Allegheny Co. 1954). Also, section 308(c), supra, provides:

"Where the shareholder seeks to inspect the books and records of the corporation, *other than its share register or list of shareholders,* he [the shareholder] shall first establish (1) that he has complied with the provisions of this section respecting the form and manner of making demand for inspection of such document; and (2) that the inspection he seeks is for a proper purpose. *Where the shareholder seeks to inspect the share register* or list of shareholders of the corporation and he has complied with the provisions of this section respecting the form · and manner of making demand for inspection of such documents, the *burden of proof shall be upon the corporation to establish that the inspection he seeks is for an improper purpose. . . ."* (Italics supplied.)

Clearly then, a statutorily created distinction exists between inspection of books and records of the

corporation and inspection of the share register by a shareholder. The rationale behind this distinction and consequent shifting of the burden of proof was touched upon in Goldman v. Trans-United Industries, Inc., at 404 Pa. 291-93:

"A distinction must be made, however, between a stockholder's right to a general inspection of the books and records and a request for inspection or a copy of the shareholders lists,

. . . "The primary reason for this special treatment lies in the very nature of and purpose for obtaining the stockholders lists, i.e., to influence the vote at an impending stockholders meeting. If the right to obtain a list of stockholders is not granted liberally by the courts, the corporation, by such simple dilatory tactics as filing an answer and submitting the case to a trial of fact, can delay the stockholder's procurement of the list beyond the date of the stockholders meeting. Conse, quently, the courts of this Commonwealth have closely scrutinized any and all answers to a complaint in mandamus when the information sought by the stockholders is restricted to a list of the names and addresses of the other stockholders."

In light of that opinion, defendant's failure to meet its burden, and the test of basic fairness that underlies corporate law, it seems manifestly proper that plaintiff be permitted to make the inspection and duplications requested. Section 308(c) provides for the relief sought in that it has:

"vested [the courts of Common Pleas] with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought."

Consequently plaintiff properly is before this court and a mandamus would be a proper disposition.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the cause.

2. Plaintiff, a registered shareholder, has properly made the required demands of defendant for the information sought.

3. The purpose for which plaintiff seeks the information contained in the share register is a proper one.

4. Plaintiff has at all times acted well within the framework of the Canons of Legal Ethics and in the utmost good faith.

5. Defendant has failed to meet the burden of proof by showing plaintiff was acting with an improper purpose.

6. The demand for inspection being properly made, defendant corporation and/or its transfer agent must permit the inspection and duplication requested.

7. Plaintiff has no other remedy at law.

8. Defendants should pay the costs of this proceeding.

## DECREE

And now, January 10, 1972, after hearing of the above entitled case, judgment is hereby entered against defendants, and defendants are commanded, immediately upon the entry of this decree, to direct Girard Trust Bank, transfer agent of Aberle Industries, Inc., upon payment by plaintiff to said Girard Trust Bank of its reasonable cost, to furnish and deliver to plaintiff, E. A. Dixon, Jr., at IVB Building, 1700 Market Street, Philadelphia, Pa.: (1) a list of names and addresses of all shareholders of Aberle Industries, Inc., as of the date of this decree, with the number of shares held by each, and (2) from the date of this decree to

the record date of voting at the next annual or special meeting of the shareholders of Aberle Industries, Inc., a copy of each daily transfer sheet showing the transfer of record ownership of shares of said corporation.